FILED

2020 Jul-15  PM 12:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **HAROLD WILLIAMS, o/b/o R.W.,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 4:19-CV-00944-CLS** |
| ) | |
| **ANDREW SAUL, Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Harold Williams commenced this action on June 20, 2019, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration, affirming the decision of the Administrative Law Judge ("ALJ"), and denying the claim he asserted on behalf of his daughter, "R.W." ("claimant"), for child supplemental security income benefits.[1] For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

---

[1] Doc. no. 1 (Complaint).

Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant was seventeen years old at the time of the administrative decision, and she then was enrolled in the eleventh grade. Claimant alleged childhood disability due to "extreme anxiety, Oppositional Defiant Disorder, Specific Learning Disorder [with] impairment in mathematics and reading comprehension, generalized anxiety disorder, ADHD [*i.e.*, Attention Deficit Hyperactivity Disorder], and obesity."[2] The ALJ found that the claimant suffered from severe impairments of obesity, anxiety, Oppositional Defiant Disorder, learning disability, and ADHD, but he concluded that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments.[3] Claimant contends that this decision was neither supported by substantial evidence, nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) erred in substituting his own opinion for that of Dr. June Nichols, the consultative examining psychologist; (2) failed to give claimant's obesity proper consideration pursuant to SSR 02-01; (3) failed to properly apply the

---

[2] Doc. no. 11 (Brief in Support of Disability), at 1 (alterations supplied).

[3] Doc. no. 9-3 (Administrative Record), at 13-23.

2

pain standard; and (4) did not base his decision on substantial evidence.[4]

If a child disability claimant has a severe impairment or combination of impairments that does not meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1 ("a listing" or "listings"), the ALJ must decide whether the claimant's impairments functionally equals a listing. To functionally equal a listing, the claimant's impairments "must be of listing-level severity; i.e., [the impairments] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a). The "domains of functioning" to be evaluated include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi). Social Security regulations inform a claimant that "marked" limitations in those domains of functioning exist

> when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three,

---

[4] Doc. no. 11 (Brief in Support of Disability), at 1.

standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).  "Extreme" limitations exist

> when your impairment(s) interferes very seriously with your ability to
> independently initiate, sustain, or complete activities.  Your day-to-day
> functioning may be very seriously limited when your impairment(s)
> limits only one activity or when the interactive and cumulative effects
> of your impairment(s) limits several activities.  "Extreme" limitation
> also means a limitation that is "more than marked."  "Extreme"
> limitation is the rating we give to the worst limitations.  However,
> "extreme limitation" does not necessarily mean a total lack or loss of
> ability to function.  It is the equivalent of the functioning we would
> expect to find on standardized testing with scores that are at least three
> standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

The ALJ found that claimant did not have either "marked" or "extreme"

impairments in any of the relevant domains and, therefore, was not disabled.[5]

## I.  DISCUSSION

**A.     The ALJ Did Not Err in Substituting His Own Opinion For That of Dr.
June Nichols, the Consultative Examining Psychologist.**

Claimant first argues that the ALJ substituted his own opinion for that of June

Nichols, Psy. D., who performed the consultative psychological evaluation.[6]  Dr.

Nichols found that claimant continues to need supportive services, suffers from

symptoms of anxiety that interfere with her academic performance and social

---

[5] *See* doc. no. 9-3 (Administrative Record), at 17-23.

[6] *See* doc. no. 11 (Brief in Support of Disability), at 12-15.

adjustment, has issues with distractability that also affect her academic performance and social relationships, has learning disabilities in math and reading, and demonstrates deficits with concentration, persistence, and pace, but is able to function in an age-appropriate manner communicatively, socially, adaptively, and behaviorally.[7]

The ALJ gave some weight to Dr. Nichols's opinion, stating that her "opinions regarding the claimant's age-appropriate functioning is generally consistent with her [Dr. Nichols's] own observations and the overall record," but that Dr. Nichols's "conclusions regarding the severity of the claimant's anxiety are not supported by the claimant's school records . . . which reveal no concerns about any anxiety-related issues."[8]  (It is worth noting that Dr. Nichols was unable to review any of claimant's school records.[9])

An ALJ may not substitute his own judgment for that of a medical expert.  *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).  That is not what happened in this case, however.  The ALJ evaluated Dr. Nichols's opinion in the context of the other available evidence.  As the ALJ stated, claimant's school records did not indicate any anxiety-related issues.  Her school records noted that she

---

[7] *See* doc. no. 9-9 (Administrative Record), at 377.

[8] Doc. no. 9-3 (Administrative Record), at 17.

[9] Doc. no. 9-9 (Administrative Record), at 377.

participated in all her classes, and that she "trie[d] very hard and receive[d] very few accommodations and modifications."[10]   One teacher remarked that claimant was occasionally easily distracted and needed extra time completing assignments, but did not indicate these issues were related to anxiety.[11]   Accordingly, the ALJ's statement that claimant's school records did not indicate anxiety was accurate.

The ALJ's finding also was supported by the opinion of the state agency doctor, Robert Estock, M.D., who reviewed Dr. Nichols's report and opined, based on the evidence, that claimant had "less than marked" limitations in (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others.[12]   Dr. Estock concluded that claimant had no limitations in moving about and manipulating objects, caring for herself, and health and physical well-being.[13]   The ALJ accorded Dr. Estock's opinions "good [*sic*]" weight because they were consistent with claimant's treatment notes.[14]

Additionally, since they are one-time examiners, the opinions of consultative medical witnesses are not entitled to deference.   *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir.

---

[10] Doc. no. 9-7 (Administrative Record), at 240.

[11] *Id.*

[12] Doc. no. 9-4 (Administrative Record), at 101-02.

[13] *Id.* at 103.

[14] *See* doc. no. 9-3 (Administrative Record), at 17.

6

1986)).  Even if they were, the ALJ's finding that claimant had "less than marked" limitations in each of the relevant categories would be consistent with Dr. Nichols's opinion that claimant was "able to function in an age-appropriate manner communicatively, socially, adaptively and behaviorally."[15]  Accordingly, remand is not warranted for additional consideration of Dr. Nichols's opinion.

## B.    The ALJ Properly Considered Claimant's Obesity.

Claimant argues that the ALJ did not properly evaluate her obesity because he did "not adequately explain how her gross weight would affect her ability to function in a work setting."[16]  As of the time of the decision, claimant weighed 270 pounds.[17]

Social Security Ruling (SSR) 02-1p provides guidance in the evaluation of obesity.[18]  It provides that "[t]here is no specific level of weight or BMI [i.e., Body Mass Index] that equates with a 'severe' or 'not severe' impairment," and that "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity)" will not establish whether obesity is a "severe" impairment.  SSR 02-1p, 2002 WL 34686281, at *4 (S.S.A.) (alterations supplied).  Rather, an ALJ must

---

[15] Doc. no. 9-9 (Administrative Record), at 377.

[16] Doc. no. 11 (Brief in Support of Disability), at 15.

[17] *Id.*; *see also* doc. no. 9-3 (Administrative Record), at 60.

[18] SSR 02-1p was rescinded and replaced by SSR 19-2p on May 20, 2019.  *See* SSR 19-2p, 84 Fed. Reg. 22,924 (May 20, 2019).  However, this decision will be evaluated based on SSR 02-1p, as it was the guidance available on the date of decision.

conduct "an individualized assessment of the impact of obesity on an individual's functioning." *Id.*

Claimant fails to explain how her obesity affected any of the categories relevant to functional equivalence. She merely asserts that she clearly falls under Level III obesity (BMI 40 or greater) as defined in SSR 02-1p.[19]

Contrary to claimant's assertions, the ALJ *did* consider how claimant's obesity affected her mobility and other limitations. The ALJ found that obesity was a severe impairment for claimant, but that she "denied any health concerns and endorsed a moderate activity level" at a check-up in November 2017.[20] The ALJ also disagreed with Dr. Estock's finding that claimant had no limitations in "Moving about and manipulating objects." Even though claimant had little energy, the ALJ found that she had "less than marked" limitations because she endorsed a moderate activity level and had no gait abnormalities.[21] Accordingly, remand is not warranted for additional consideration of claimant's obesity.

## C.   The ALJ Properly Applied the Pain Standard.

Claimant also asserts that the ALJ improperly applied the pain standard. To demonstrate that pain or another subjective symptom renders her disabled, a claimant

---

[19] *See* doc. no. 11 (Brief in Support of Disability), at 16.

[20] Doc. no. 9-3 (Administrative Record), at 16.

[21] *Id.* at 21.

8

must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986), and *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). The ALJ properly applied those legal principles. He found that claimant's medically determinable impairments could reasonably have been expected to produce the symptoms claimant alleged, but that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. That conclusion was in accordance with applicable law. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

Claimant made no allegations of pain, but the same standard is applied to

9

claimant's other symptoms as well.[22]   The ALJ clearly explained that, even though

claimant's underlying impairments reasonably could be expected to produce her

symptoms, the evidence of record demonstrated that those impairments produced

"less than marked" limitations in any of the six relevant domains.[23]   Accordingly,

remand is not warranted for re-application of the pain standard.

**D.     The ALJ's Decision Was Based on Substantial Evidence.**

Claimant argues that the ALJ's unfavorable decision was not supported by

substantial evidence, repeating earlier arguments that the ALJ improperly rejected Dr.

Nichols's opinion and improperly applied the pain standard.   For the reasons

previously stated, those arguments are without merit.

Claimant also argues that the ALJ ignored the testimony of claimant's father

without adequate explanation.[24]   Unlike a medical opinion, however, the ALJ does

not owe deference to lay statements, or need good cause to reject them.   *See* 20 C.F.R.

§ 416.927(a)(2), (c)(2); *McMahon v. Commissioner, Social Security Administration*,

583 F. App'x 886, 891-92 (11th Cir. 2014).   For the same reason, the ALJ does not

need to assign any weight to the opinions of claimant's father.   *McMahon*, 583 F.

---

[22] *See id.* at 15 ("[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain *or other symptoms* has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.").

[23] *Id.* at 17-23.

[24] Doc. no. 11 (Brief in Support of Disability), at 21.

10

App'x at 892.

Even so, the ALJ considered claimant's father's opinion in detail.  First, when evaluating claimant's limitations in "Attending and completing tasks," the ALJ noted that her father testified that claimant "is easily distracted and has some difficulty completing tasks independently, but the school records [did] not reveal any significant attention issues."[25]  When evaluating claimant's limitations in "Interacting and relating with others," the ALJ noted that claimant's father "reported that the claimant is selective about who she will talk to and has difficulty keeping friends, and he indicated that she generally prefers to keep to herself."[26]  When considering claimant's limitations in "Moving about and manipulating objects," the ALJ noted that claimant's father "reported that she does not move around much and does not seem to have much energy."[27]  Finally, when considering claimant's limitations in caring for herself, the ALJ considered her father's statement that claimant was "very immature for her age."[28]  Accordingly, the ALJ did not improperly ignore the testimony of claimant's father.

## II. CONCLUSION

---

[25] Doc. no. 9-3 (Administrative Record), at 19.

[26] *Id.* at 20.

[27] *Id.* at 21.

[28] *Id.* at 22.

The court concludes that the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

**DONE** and **ORDERED** this 15th day of July, 2020.

_____
Senior United States District Judge